# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL M. TONEY,

*Plaintiff,*

vs.

Case No. 15-3209-EFM-DJW

GORDON HARROD, et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Pro se Plaintiff Michael Toney, a prisoner incarcerated at the El Dorado Correctional Facility ("EDCF"), sued several EDCF prison officials under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Toney alleges an array of constitutional and statutory violations related to his incarceration and seeks both injunctive relief and monetary damages. Five defendants—James Heimgartner, Robert Kelley, Randolph Johnson, Heath Austin, and Jess Quidichay, Jr. (collectively "State Defendants")—have moved to dismiss Toney's Second Amended Complaint (Doc. 42). For the following reasons, the State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 49) is granted in part and denied in part.

# I. Factual and Procedural Background[1]

Plaintiff Michael Toney initiated this lawsuit by filing his original complaint on August 31, 2015. On February 29, 2016, Toney asked for leave to file a supplemental complaint. The Court treated Toney's motion as a motion to amend the original complaint and granted it on May 11, 2016. On December 15, 2016 Toney again asked the Court for leave to file a supplemental complaint. The Court ordered Toney to condense his original complaint (Doc. 1), his amended complaint (Doc. 12), and his proposed supplemental complaint (Doc. 37) "into a single document that sets forth all of the defendants and claims." So, on February 23, 2017, Toney filed his Second Amended Complaint (Doc. 42).

Toney's Seconded Amended Complaint raises multiple claims against a number of EDCF prison officials for mistreatment during his incarceration. On May 11, 2016 the Court screened Toney's complaint pursuant to 28 U.S.C. § 1915A and dismissed several defendants. Along with the five defendants bringing this motion to dismiss, there are three additional defendants remaining in this suit: Dr. Gordon Harrod, (fnu) Nickelson, and (fnu) Sullivan.

The claims against the five defendants bringing this motion can be grouped into three categories. The first category concerns Toney's meals during Ramadan 2015. The second category concerns Toney's two disciplinary hearings and subsequent punishment. The third category concerns Toney's medical treatment during his incarceration. The Court will summarize the facts according to these categories.

---

[1] The facts are taken from Toney's Second Amended Complaint and are accepted as true for the purposes of this ruling.

## A.    Ramadan Meals

Toney is a practicing Muslim.  As such, every year he fasts from dawn to sunset during the Month of Ramadan.  Muslim inmates at EDCF are served two meals during Ramadan—an early breakfast and a late dinner—with each meal containing larger than normal portions.  Toney is kept in long-term administrative segregation and has been housed there "[a]t all time relevant to [his] complaint."  For years, EDCF practice was to serve breakfast during Ramadan to Muslim prisoners before non-Muslim prisoners.  However, on the first day of Ramadan 2015 that changed for the prisoners in administrative segregation.  On June 18, 2015, EDCF officers refused to serve Toney breakfast before the other prisoners, and by the time Toney received his food he had already begun his morning fast.

The officer serving breakfast told Toney that Muslim prisoners "only needed to be fed "before sunrise."  Toney contends that Islam requires he begin his fast at "dawn," which is approximately one and a half hours before sunrise.  On June 20, 2015, Toney explained this difference to EDCF Lieutenant Jess Quidichay by filing a "form-9."  On June 29, 2015, Quidichay responded in writing that "procedure dictates you receive your meal prior to sunrise or before daylight."  On July 28, 2015, Toney appealed his grievances to the prison warden, James Heimgartner.  Months later, Toney complained to Heimgartner again, this time informally and in person.

Ramadan began June 18, 2015 and lasted for 30 days.  During those 30 days Toney's breakfast was served after dawn all but 3–5 days, and Toney abstained from eating breakfast any day the meal was delivered late.  Toney believes he lost "a considerable amount of weight—between 10–15 pounds" during Ramadan 2015.  Toney admits, however, he protested his meals coming late by going on a three-day hunger strike from June 24–27, 2015.  Over the course of

Ramadan, Toney experienced headaches, dizziness, low energy, weakness, and disrupted sleep. He also believes a lack of nutrition aggravated his preexisting high-blood pressure.

## B.     Disciplinary Hearings

On May 20, 2016, Toney was cited for insubordination and disrespect for calling prison officials profane names.  Six days later, defendant Robert Kelley presided over Toney's disciplinary hearing by phone.  Toney alleges that Kelley abruptly discontinued the phone call after Toney denied the allegations and asked to call witnesses.  Later, the hearing was continued without Toney present.  Defendant Heath Austin was assigned to represent Toney's interests. Kelley found Toney guilty and assigned him a $5 fine and five days in disciplinary segregation. The decision was upheld on administrative appeal.  Toney alleges Kelley denied him procedural due process by not allowing him to call witnesses.  He also alleges Austin violated procedural due process by inadequately representing his interests.

On June 30, 2015 Toney faced more disciplinary charges after being cited for disruptive behavior in violation of K.A.R. 44–12–318.  Defendant Johnson conducted the disciplinary hearing, found Toney violated the regulation, and assigned Toney a $5 fine and seven days in disciplinary segregation.  The decision was upheld on administrative appeal.  Toney argues Johnson found him guilty without justification.

## C.     Medical Treatment

Beginning around November 2013, Toney suffered from rectal pain and bleeding whenever he had a bowel movement.  Toney was examined by a member of Corizon Health Services, Inc ("Corizon")—a private company providing health services to EDCF.  Here, Toney was diagnosed with hemorrhoids and was given a cream to assist with the pain.  Toney continued to experience pain and bleeding and returned to Corizon dozens of times.  Toney was given

creams, antibiotics, suppositories, steroids, stool softeners and laxatives to alleviate his symptoms. Corizon also conducted a colonoscopy and stool sample analysis to assist in diagnosing Toney's condition. Unrelated to Corizon's treatment plan, Toney was also taking fiber tablets, which may have exacerbated his pain and bleeding.

Most of Toney's medical visits were with nurse Nickelson. But on June 4, 2015, Toney was seen by Dr. Harrod for a rectal examination. Dr. Harrod concluded Toney may need surgery and referred him to an outside specialist. The specialist determined that Toney had rectal fissures and recommended surgery. Toney claims his surgery has not been scheduled.

Toney filed an administrative grievance on June 4, 2015 to Angela Sirmans, Corizon's Assistant Director of Nursing. The grievance stated that Corizon's medical staff was negligent when they misdiagnosed his physical condition as hemorrhoids, failed to warn that fiber tablets could contribute to his pain and bleeding, limited his participation in making important medical decisions, delayed referring him to a doctor, delayed filling his prescriptions, communicated poorly with him, and kept inadequate medical records. Sirmans' review of Toney's grievance did not address the majority of Toney's complaints and offered no relief. On July 15, 2015, Heimgartner reviewed Toney's grievance, corroborated Sirman's findings, and declined to take further action. Toney seeks damages against Heimgartner for his failure to take disciplinary or remedial measures in response to Toney's complaint.

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the

---

[2] Fed. R. Civ. P. 12(b)(6).

Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[5]  Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint but need not afford such a presumption to legal conclusions.[6]  Viewing the complaint in this manner, the Court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

The pleadings of a pro se plaintiff are to be liberally construed.[9]  But, the Court is not an advocate and will not allege additional facts or assert alternative legal theories for the pro se party.[10]  To avoid dismissal, the pro se complaint "must set forth the grounds of plaintiff's

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[4] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[10] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action . . . [and] must allege sufficient facts to state a claim which is plausible—rather than merely conceivable—on its face."[11]

## III.    Analysis

### A.    Subject-Matter Jurisdiction

Before undergoing a Rule 12(b)(6) analysis, the Court must first determine if there are any claims over which it lacks subject-matter jurisdiction.[12]  Toney seeks damages under § 1983 against defendants in both their official and individual capacities.  Additionally, Toney seeks damages for violation of the RLUIPA.  Defendants argue all official capacity claims should be dismissed for lack of subject-matter jurisdiction because Eleventh Amendment immunity extends to state actors in their official capacities.

Under the Eleventh Amendment, states and state officials sued in their official capacity are immune from suit in federal court unless the state has waived its immunity or Congress has abrogated it.[13]  If state sovereign immunity applies, it goes beyond mere immunity from liability—"it actually deprives federal courts of subject-matter jurisdiction."[14]  It is well-established that Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983[15] or RLUIPA.[16]

---

[11] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008).

[12] *See In re Aramark Leisure Servs.*, 523 F.3d 1169, 1173 (10th Cir. 2008).

[13] *See V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1420-21 (10th Cir. 1997).

[14] *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)).

[15] *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996) (citing *Quern v. Jordan,* 440 U.S. 332, 341 (1979)).

The Court therefore dismisses Toney's claims to the extent they seek damages against the defendants in their official capacities. There is no question all five defendants are state officials. Congress did not abrogate Kansas' immunity when it passed § 1983 or RLUIPA, and no colorable claim has been made that Kansas waived its immunity. Thus, the Court lacks subject-matter jurisdiction over Toney's official capacity claims, and those claims are accordingly dismissed.

**B.    Ramadan Meals**

Toney claims the failure to provide timely meals during Ramadan 2015 violated the First Amendment and RLUIPA's religious protections, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's equal protection clause. Toney fails to link each claim to a specific defendant, but the Court, construing the complaint liberally, determines the claims arising from Toney's Ramadan meals can only apply to defendants Heimgartner and Quidichay. Neither Heimgartner nor Quidichay were directly responsible for delivering Toney's meals, serving only in a supervisory capacity to the officer who did. The Court will first consider each constitutional and statutory claim to determine if Toney states a plausible violation of a protected right. Then the Court will address to what extent either Heimgartner or Quidichay is responsible for that violation in their supervisory capacity.

*1.    First Amendment*

The first legal theory Toney proposes is a violation of his First Amendment right to freely exercise his religious beliefs. Inmates retain fundamental constitutional rights even while

---

[16] *Sossamon v. Texas*, 563 U.S. 277, 293 (2011).

incarcerated;[17] but those rights are not absolute and can be outweighed by legitimate penological interests.[18]  Protected rights "include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment."[19]  The First Amendment safeguards an inmate's dietary practices as long as the diet is based on genuinely and sincerely held religious beliefs.[20]  There is no requirement that the beliefs be a central tenet or even doctrinally necessary to the inmate's religion.[21]  Investigating the sincerity of an inmate's belief is "premature at the [motion to dismiss] stage of the claim."[22]

Here, Toney alleges his religious beliefs require him to begin his daily Ramadan fast at "dawn," as opposed to sunrise or daylight.  It is undetermined—and ultimately immaterial—if Toney's stance on when Ramadan fasting begins is a central tenet of Islam or a viewpoint unique to Toney.  Toney is entitled to exercise his sincerely held religious beliefs, regardless if they are universally accepted by his religion or not.  Consistent with Tenth Circuit law, the Court declines to scrutinize the sincerity of Toney's belief at this stage of the litigation.

Toney has a constitutional right to adhere to a religious diet, and that right was not stripped upon his incarceration.  The Court is cognizant of the difficulties inherent to running a prison and recognizes there may be legitimate reasons accommodating Toney's religious beliefs

---

[17] *Makin v. Colorado Dep't of Corr.,* 183 F.3d 1205, 1209 (10th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

[18] *Williams v. Wilkinson,* 645 F. App'x 692, 704 (10th Cir. 2016) ("[P]rison-official defendants may identify the legitimate penological interests that justified the impinging conduct, and the court must apply a balancing test to determine the reasonableness of the regulation.") (internal citations and quotations omitted).

[19] *Id.* (internal citations omitted).

[20] *Ind v. Wright*, 52 F. App'x 434, 439 (10th Cir. 2002) (citing *LaFevers v. Saffle,* 936 F.2d 1117, 1119 (10th Cir. 1991)).

[21] *Williams*, 645 F. App'x at 704.

[22] *Id.* (internal quotations omitted).

would be prohibitively burdensome. Although the defendants were permitted to identify legitimate penological interests justifying the policy, they have not provided any at this time. For that reason, the Court will not weigh the parties' competing interests at this stage. Toney has adequately stated a claim for a free exercise violation. Whether any of the named defendants are responsible for that violation will be discussed below in section III.B.5.

  2.  *RLUIPA*

  The second theory Toney seeks damages under is a RLUIPA violation. The Court has already noted the Eleventh Amendment bars Toney's RLUIPA claims against all defendants acting in their official capacities. Moreover, the Tenth Circuit has held "there is no cause of action under RLUIPA against individual defendants in their individual capacities."[23] Without a cause of action Toney cannot bring a claim for damages under RLUIPA and those claims are accordingly dismissed.

  3.  *Equal Protection*

  Next, Toney alleges an equal protection violation under the Fourteenth Amendment, claiming Muslim prisoners in general population received their morning meals before non-Muslim prisoners but Muslim prisoners in administrative segregation were not afforded the same accommodation. To make a viable equal protection claim, a prisoner must show he was treated differently from those who were "similarly situated" to him and the difference in treatment was not "reasonably related to legitimate penological interests."[24] The prisoner and the person or

---

[23] *Id.* (citing *Stewart v. Beach*, 701 F.3d 1322, 1333–35 (10th Cir. 2012)).

[24] *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (internal citations omitted).

group he compares himself to must be similarly situated "in all relevant aspects."[25]  Importantly, segregated inmates "by definition [are] not similarly situated to general population inmates during [their] time in administrative segregation."[26]

According to the most recent complaint, Toney "is currently housed in long-term administrative segregation" and has been in segregation "[a]t all time relevant to this complaint." Toney's equal protection claim relies solely on the allegation that "Muslims in general population were allowed to eat breakfast prior to any other prisoners" and Muslims in administrative segregation were not.  Toney was, "by definition," situated differently than general population Muslims.  Toney fails to allege facts to support the first element of an Equal Protection violation claim—so, it is unnecessary for the Court to move to the second element and analyze whether the difference in treatment is reasonably related to legitimate penological interests.  The equal protection claim is dismissed.

### 4. Eighth Amendment

Toney's final claim relating to his Ramadan meals is an Eighth Amendment violation for cruel and unusual punishment.  Defendants respond that the physical symptoms Toney allegedly suffered because of food deprivation were not sufficiently serious enough to violate the Eighth Amendment.  An inmate alleging an Eighth Amendment violation for a prison condition must show the condition or deprivation was "objectively, sufficiently serious."[27]  Allegations of mere

---

[25] *Neal v. McKune*, 2013 WL 1446791, at *6 (D. Kan. 2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

[26] *Hughes v. Heimgartner*, 2013 WL 760600, at *2 (D. Kan. 2013) (quoting *Fogle*, 435 F.3d at 1261).

[27] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

discomfort do not implicate the Eighth Amendment.[28]  Instead, a deprivation is only objectively, sufficiently serious if it denies an inmate "the minimal civilized measure of life's necessities . . . [and poses] a substantial risk of serious harm."[29]

Specific to food deprivation, the Eighth Amendment only requires prisons to provide inmates "nutritionally adequate" food.[30]  Neither weight loss nor physical ailments related to fewer calories necessarily show a serious deprivation unless the weight loss or ailments substantially threaten the inmate's health and safety.[31]  The Eighth Amendment is not violated by the denial of a requested diet as long as nutritionally adequate food is available,[32] and this rule applies even when the diet is requested for religious reasons.[33]

Here, the Court is not convinced Toney's symptoms—headaches, dizziness, low energy, physical weakness, difficulty sleeping, weight loss—are objectively, sufficiently serious enough to violate the Eighth Amendment.  But even assuming Toney's symptoms are objectively, sufficiently serious, the Eighth Amendment claim would still fail because Toney had access to nutritionally adequate food.  On the first day of Ramadan 2015, Toney says he had already begun

---

[28] *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006).

[29] *Farmer*, 511 U.S. at 834 (internal citations omitted); *see also Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) (finding "[a] one-time denial of 'nine consecutive meals' during a three-day period . . . does not rise to the level of a constitutional violation *in the absence of any lasting harm or injury . . .*") (emphasis added).

[30] *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (internal citations omitted).

[31] *Powers v. Washington Dep't of Corr.*, 2013 WL 1755790, at *13–14 (W.D. Wash. 2013) (finding that a 15 pound weight loss and occasional headaches, diarrhea, and constipation did not show a serious deprivation when the inmate did not seek medical treatment or show the weight loss or ailments posed an immediate danger).

[32] *Neal v. McKune*, 2013 WL 1446791, at *7 (D. Kan. 2013) (citing *LaFevers*, 936 F.2d at 1120).

[33] *Watkins v. Rogers*, 525 F. App'x 756, 759 (10th Cir. 2013) (applying *LaFevers* to the denial of a religious diet).

his morning fast by the time breakfast was served. Toney goes on to allege that breakfast was served after he began his morning fast all but three to five days that month.

Toney never alleges his breakfast was withheld entirely or that the meals were nutritionally inadequate. Toney only asserts that the meals were delivered late and he could not in good conscience break his fast by eating after dawn. However, as the Tenth Circuit has held, "the mere denial of a requested religious diet is insufficient to establish a cognizable Eighth Amendment claim."[34] If denying a religious diet—the effect of which is an inmate either breaks his diet or abstains from eating—is not cruel and unusual under the Eighth Amendment, then the *timing* of serving a meal cannot be cruel and unusual even when it forces the inmate to break his religious fast or not eat. Because nutritionally adequate food was available to Toney, he cannot succeed on an Eighth Amendment claim for food deprivation. Accordingly, the Eighth Amendment claim is dismissed.

### 5. *Supervisory Liability*

Toney's free exercise claim is the only violation related to Toney's Ramadan meals to survive dismissal, so the Court now considers whether Heimgartner or Quidichay can be liable for that violation in their supervisory capacity. Liability in a § 1983 claim cannot be based on supervisory status alone;[35] rather, there must be an "an affirmative link between the supervisor and the violation."[36] The "affirmative link" requirement has three prongs: "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind."[37] Here, the bulk

---

[34] *Id.* (internal citations omitted).

[35] *Iqbal*, 556 U.S. at 676.

[36] *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal quotations omitted).

[37] *Id.*

of the defendants' argument challenges Heimgartner and Quidichay's personal involvement under the first prong. The next two prongs go largely unchallenged by Heimgartner or Quidichay except for the cursory statement that Toney fails to allege either defendant acted with the requisite state of mind. The Court analyzes the first and third prong in turn.

      a.     Personal Participation

It is well established that a defendant's personal participation in the alleged violation of a plaintiff's constitutional right is essential to a § 1983 action.[38] Although vicarious liability is unavailable under § 1983 to hold a supervisor accountable for his subordinates' actions,[39] liability may be imposed if that supervisor "creates, promulgates, implements, or in some other way possesses responsibility" for the operation of a policy that subjects the plaintiff to a deprivation of a constitutional right.[40] It is true a supervisor's subsequent denial of a grievance is insufficient to establish personal participation in the original violation.[41] But the officer denying the grievance can be found liable if he "has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or effective means to correct it."[42]

Quidichay and Heimgartner claim Toney inadequately alleges their personal involvement in denying his religious meals, framing their role as only supervisors denying Toney's subsequent grievances. The Court, however, disagrees with this characterization. The Court

---

[38] *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

[39] *Iqbal*, 556 U.S. at 676 (2009).

[40] *Dodds*, 614 F.3d at 1199 (internal citations omitted).

[41] *Arocho v. Nafziger*, 367 F. App'x 942, 955 (10th Cir. 2010) (internal citations omitted).

[42] *Id.*

recognizes that Toney filed grievances with Quidichay and Heimgartner that were denied. But these grievances are not the grand sum of Toney's allegations. Toney also alleges "defendants…created and enforced" the policy that Muslims only needed to be served before sunrise or daylight, and these grievances gave defendants notice of the wrong and effective means to correct it. Given Toney's position, he admits he is "confused as to what role each defendant played in the creation, enactment, and use of [the policy]." But Toney was told generally that the prison "administration" decided that the current Ramadan procedures were appropriate and would not be modified.

Based on these allegations, the Court finds that Toney has sufficiently alleged Heimgartner and Quidichay either created, promulgated, implemented, or in some other way possessed responsibility for the procedure Toney's claim is based on. Whether Toney can meet his evidentiary burden is a question for another time, but he has stated, to the Court's satisfaction, Heimgartner and Quidichay's personal involvement.

### b. State of Mind

The Court considers next whether Toney adequately alleges a culpable state of mind under the third prong of the test against either Heimgartner or Quidichay. Section 1983 contains no separate state of mind requirement.[43] Instead, it adopts the standard from the underlying constitutional violation.[44] The only constitutional violation related to Toney's Ramadan meals left to consider is Toney's free exercise claim, which requires a "conscious or intentional interference" with that right.[45]

---

[43] *Dodds*, 614 F.3d at 1204–05 (citing *Daniels v. Williams,* 474 U.S. 327, 330 (1986)).

[44] *Id.*

[45] *Neal v. McKune*, 2013 WL 1446791, at *4 (D. Kan. 2013) (citing *Gallagher*, 587 F.3d at 1070).

On July 28, 2015, Toney notified Heimgartner in writing that he and other Muslim prisoners in administrative segregation were not receiving breakfast early enough to eat before starting their morning fast. "Months later" Toney complained to Heimgartner again, this time informally and in person. According to Toney's complaint, Ramadan began June 18, 2015 and lasted 30 days, so Heimgartner learned of the problem after Ramadan 2015 had already ended. Toney never reports any problems with his meals after Ramadan 2015. The policy in question says Muslims must be fed "prior to sunrise or daylight." While this may be inadequate for Toney to exercise his religious beliefs, the procedure is clearly intended to accommodate Muslims celebrating Ramadan, not discriminate against them. Granted, this policy may be based on a negligent misinterpretation of Islamic practice. But a free exercise claim requires more than mere negligence, and Toney pleads no facts suggesting Heimgartner created the procedure with discriminatory intent. Without allegations that Heimgartner deprived Toney of his religious rights *after* learning of the policy's shortcomings, the Court cannot find that Heimgartner consciously or intentionally interfered with those rights. Therefore, the free exercise claim against Heimgartner is dismissed.

Turning to Quidichay, Toney first complained to Quidichay by filing a "form-9" on June 20, 2015. On June 29, 2015, Quidichay responded that "procedure dictates that you receive your meal prior to sunrise of before daylight." This means Quidichay was put on notice of a constitutional violation and had, at a minimum, two weeks to take corrective measures before Ramadan 2015 ended, yet failed to do so. Thus, the Court finds it sufficiently alleged that

Quidichay consciously or intentionally interfered with Toney's First Amendment rights. Therefore, Quidichay's motion to dismiss Toney's free exercise claim is denied.

## C.    Disciplinary Hearings

Toney alleges his procedural due process rights were violated by defendants Kelley, Austin, and Johnson during two disciplinary hearings.  At each hearing, Toney was sent to disciplinary segregation and issued a fine.  "The Supreme Court long ago held that the 'requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.' "[46]  While due process protections extend to inmates, "the extent of that protection is significantly less than that guaranteed to free persons."[47]  In 1995, the Supreme Court held that disciplinary segregation creates a liberty interest only if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life . . . [or] inevitably affect[s] the duration of [the inmate's] sentence."[48]  In that case, the Supreme Court held that 30 days in disciplinary segregation did not represent an atypical or significant deprivation, nor did it inevitably affect the duration of confinement.[49]

Turning to Toney's claims, this Court holds that spending five and seven days in disciplinary segregation does not by itself create a liberty interest.  Both the Supreme Court and

---

[46] *Hornsby v. Jones*, 392 F. App'x 653, 655–56 (10th Cir. 2010) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972)).

[47] *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–57 (1974)).

[48] *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995).

[49] *Id.* at 486–87; *see* also *Hornsby*, 392 F. App'x at 655–56 ("[A] a sentence of 20 days in disciplinary segregation does not rise to the level of punishment that would invoke constitutional concern.").

the Tenth Circuit have found much longer terms in disciplinary segregation to withstand constitutional scrutiny. Toney has not pleaded any additional facts showing his two relatively short stints in disciplinary segregation were otherwise atypical and significant hardships in relation to the ordinary incidents of prison life. Neither does Toney adequately plead facts showing his prison sentence was inevitably prolonged by the disciplinary hearings or his subsequent time in segregation. With no liberty interest at stake, Toney was not entitled to procedural due process before being sent to disciplinary segregation.

Next, the Court considers whether Toney had a protected property interest in his prison accounts, which would entitle him to procedural due process before a fine could be levied against him. The Court elects to resolve this issue under the qualified immunity doctrine. If qualified immunity applies, it is more than a defense to liability—it is immunity from the suit itself.[50] To determine if qualified immunity applies, a court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation.[51] Both elements must be met to for a plaintiff to overcome qualified immunity, and it is within a court's "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[52]

Under the second element, the Court looks to Supreme Court or Tenth Circuit precedent to determine if a right is "clearly established."[53] Based on Tenth Circuit precedent, whether

---

[50] *Pearson v. Callahan*, 555 U.S. 223, 261 (2009) (internal citations omitted)

[51] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 232).

[52] *Pearson*, 555 U.S. at 261.

[53] *Wilson*, 625 F.3d at 690.

inmates have a property interest in their prison accounts seems to be an unsettled question of law.[54]   However, earlier this year, the Tenth Circuit held that if inmates have a property interest in their prison accounts, that right is not clearly established for qualified immunity purposes.[55]

Defendants are entitled to qualified immunity unless the right claimed by Toney was clearly established at the time of the alleged violation.  Since a protected property right in prison accounts is not clearly established in the Tenth Circuit, Kelley, Austin, and Johnson are entitled to qualified immunity on that claim.  Qualified immunity is more than a mere defense to liability, it is immunity from suit.  Therefore, Kelley, Austin, and Johnson[56] are dismissed from this suit.

## D.    Medical Treatment

Toney seeks damages against Heimgartner for pain and suffering caused by inadequate medical treatment.  Heimgartner asks the Court to dismiss for lack of personal participation in Toney's medical treatment.  This Court ruled in its screening order that Toney cannot proceed against Heimgartner "for his role in reviewing plaintiff's administrative grievance."[57]  Of course, as discussed above, the person denying the grievance can be liable if he created, promulgated, implemented, or in some other way possessed responsibility for a policy that caused the constitutional violation.

---

[54] *See Clark v. Oakley*, 560 F. App'x 804, 808 n.1 (10th Cir. 2014) (citing to a Third Circuit case that found the right exists, but declined to rule on the issue because "strictly speaking that is an issue that is not before [the court]").

[55] *Leek v. Miller*, 2017 WL 2459812, at *5 (10th Cir. 2017).

[56] It appears Toney names Johnson as the defendant in his request for an injunction to "Amend K.A.R. 44–12–318 to comport with Due Process."  However, Toney does not allege any facts to suggest Johnson has the authority to amend the regulation, so the Court dismisses Johnson from that claim.

[57] Doc. 11 at 11.

Toney fails to identify any policy Heimgartner was responsible for that caused Toney's medical mistreatment. Toney makes the entirely conclusory allegation that Corizon "has a policy or custom of not providing prisoner with referrals for outside treatment . . . providing prisoners with incomplete medical records . . . [and] allowing prisoners' prescriptions to run out or lapse." However, as this Court previously held, "neither plaintiff's allegations nor his exhibits identify a policy or custom of Corizon and link it to his alleged injuries." Additionally, even if a Corizon policy caused Toney's injuries, the allegations fail to show how Heimgartner is responsible for that policy.

Lastly, Toney seeks damages against Heimgartner for failing to take remedial or disciplinary action against his subordinates. Toney claims this amounts to deliberate indifference on the part of Heimgartner to Toney's serious medical needs. It is true that a "medical staff's 'deliberate indifference to serious medical needs of prisoners' constitutes a violation of the Eighth Amendment."[58] However, negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment…[n]or does disagreement in medical judgment."[59]

Here, Toney's medical problems began in November 2013. Since 2013, Toney has been seen by medical personnel dozens of times—including by LPNs, APRNs, RNs, a general practitioner, and a specialist—and received a variety of treatments. Toney claims his condition was misdiagnosed in 2013, which led to ineffective treatments and perhaps even aggravated his actual condition. Furthermore, Toney claims the medical staff communicated poorly, limited his

---

[58] *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

[59] *Id.*

participation in medical decisions, allowed his prescriptions to lapse or took too long filling them, and kept incomplete medical records.  These claims may very well constitute negligence as Toney claims, but they fall short of alleging deliberate indifference to serious medical needs, as required for an Eighth Amendment violation.

Toney claims the outside specialist properly diagnosed his medical condition and recommended corrective surgery, which has not been scheduled.  The Court recognizes that denying this surgery may constitute deliberate indifference to a serious medical need.  However, no facts suggest Heimgartner was aware of, or deliberately indifferent to, this medical need.  Toney filed an administrative grievance that was eventually reviewed by Heimgartner, but the grievance was silent on Toney's need for surgery.  The facts provided by Toney do not state a plausible claim that Heimgartner was deliberately indifferent to a serious medical need, and Heimgartner is hereby dismissed from this claim.

## IV.    Conclusion

The Court dismisses all claims against all defendants named in their official capacities due to a lack of subject-matter jurisdiction.  Toney has sufficiently stated a First Amendment violation against Quidichay for interfering with Toney's Ramadan meals and that claim survives the motion to dismiss.  The Court dismisses the First Amendment claim against Heimgartner because Toney has not adequately alleged that Heimgartner acted with the requisite culpable state of mind.  Furthermore, the Court dismisses all claims against Heimgartner and Quidichay arising under RLUIPA, the Fourteenth Amendment, and the Eighth Amendment as it relates to Toney's Ramadan meals.  The Court finds that Toney was not entitled to procedural due process at his disciplinary hearings, so the claims against Kelley, Austin, and Johnson are dismissed.  The Court dismisses all claims against Heimgartner related to Toney's medical treatment

because Toney has not sufficiently alleged that Heimgartner was deliberately indifferent to a serious medical need.

Therefore, the remaining claims in this suit are as follows: (1) Toney's request for injunctive relief against Heimgartner, (2) Toney's claim for monetary damages against Quidichay for a First Amendment violation, (3) Toney's request for injunctive relief against Quidichay, (4) Toney's claim for monetary damages against Harrod for an Eighth Amendment violation, (5) Toney's claim for monetary damages against Nickelson for an Eighth Amendment violation, (6) Toney's claim for monetary damages against Sullivan for an Eighth Amendment violation, and (7) Toney's request for injunctive relief against Sullivan.

**IT IS THEREFORE ORDERED** that State Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 49) is **GRANTED IN PART AND DENIED IN PART**.

Specifically, Quidichay's motion to dismiss Toney's First Amendment claim is denied. The following defendants are dismissed in their entirety: Kelley, Johnson, and Austin. The following claims are dismissed from this suit: all claims for monetary damages against Heimgartner and all claims for monetary damages against Quidichay arising under RLUIPA, the Fourteenth Amendment, and the Eighth Amendment.

**IT IS SO ORDERED.**

Dated this 20th day of October, 2017.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE