IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL M. TONEY,

    *Plaintiff,*

vs.

GORDON HARROD, et al.,

    *Defendants.*

Case No. 15-3209-EFM-TJJ

**MEMORANDUM AND ORDER**

Plaintiff Michael Toney, an inmate incarcerated at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas, filed suit under 42 U.S.C. § 1983 against several EDCF officials, alleging a variety of constitutional violations. Two of the defendants—Warden James Heimgartner and Lieutenant Jess Quidichay, Jr.—filed a Motion to Dismiss. For the reasons explained below, Defendants Heimgartner and Quidichay, Jr's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 85) is granted in part and denied in part.

### I. Factual and Procedural Background[1]

In August 2015, Toney filed suit against several EDCF employees, as well as medical personnel employed by Corizon Health Services, Inc. ("Corizon")—a private company providing

---

[1] The facts are taken from Toney's Third Amended Complaint and are accepted as true for the purposes of this ruling.

healthcare to EDCF inmates. Toney's original Complaint alleged extensive constitutional and statutory violations related to his incarceration. Toney's Third Amended Complaint distills his claims into three counts. In Count 1, Toney alleges an Eighth Amendment violation for failing to provide adequate medical treatment.[2] In Count 2, Toney alleges a First Amendment violation for failing to provide Toney meals in a way that would accommodate his religious beliefs. In Count 3, Toney alleges an Eighth Amendment violation for excessive use of force. Toney's First Amendment claim is the only Count applicable to Heimgartner and Quidichay.

**A.      Toney's Free Exercise Claim**

Toney is a practicing Muslim. Accordingly, every year during the month of Ramadan he fasts from dawn to sunset. During the month of Ramadan, EDCF serves Muslim inmates two large meals per day, an early breakfast and a late dinner; for years it was EDCF's practice to serve breakfast to Muslim inmates before non-Muslim inmates. However, that practice changed on the first day of Ramadan in 2015 for all the inmates in administrative segregation, which is where Toney was held at all times relevant to this case. On June 18, 2015, Toney did not receive his morning meal until after he had started his religious fast. When Toney complained to the EDCF officer serving breakfast, the officer informed Toney that he was instructed by his superiors to serve Muslims breakfast before "sunrise."

---

[2] Whether Toney even intends to bring an Eighth Amendment violation is somewhat unclear. Count 1's heading states: "Violation of Mr. Toney's Eighth Amendment Rights and Medical Negligence." But the only mention of the Eighth Amendment in Count 1 is in the heading, and Toney's factual allegations appear to be related entirely to his medical malpractice claim. On September 21, 2018, the parties stipulated to Toney dismissing the medical malpractice claim without prejudice. The stipulation did not dismiss the Eighth Amendment claim. The Court is highly skeptical that Toney sufficiently alleged an Eighth Amendment violation related to his medical treatment. Nevertheless, because Count 1 is inapplicable to Heimgartner and Quidichay, the Court makes no ruling on this matter now.

On June 20, 2015, Toney sent an informal complaint to Defendant Quidichay, via a "Form-9."[3] In his complaint, Toney explained that his religious beliefs obligate him to begin fasting at dawn, approximately one and a half hours before sunrise. Toney requested that he and all Muslim inmates in administrative segregation be served breakfast before the other inmates, as had been the practice for years and was still the practice for Muslim inmates in general population. Quidichay responded in writing on June 29, 2015, stating: "Procedure dictates that you receive your meal prior to sunrise or before daylight." Toney never received a copy of this procedure. On June 30, 2015, Toney submitted an informal complaint to Aramark, EDCF's food contractor, stating that Muslims in segregation were not being adequately accommodated. Aramark's head supervisor responded that "we go down when count clears and DOC lets us go." Toney alleges that the counting process is ultimately within the purview of the Captain's office.

Toney states it was apparent he would receive no relief informally, so he filed an official grievance to Unit Team Martin on July 11, 2015. Unit Team Martin responded in writing almost two weeks later, in which he made the following statement: "It has been determined and agreed upon by Administration, that it is not necessary to serve Ramadan meals first . . . . Ramadan meals can be and are served in conjunction with all other meals, which are delivered to the unit and processed for serving and consumption well before sunrise. . . . It has been determined by the Chaplain and Administration that the current manner of serving Ramadan meals is appropriate and is well within your religious guidelines." In all, Toney alleges that during the month of Ramadan

---

[3] Toney attached the Form-9 as an exhibit to his Third Amended Complaint. The Form-9 is addressed to "10 to 6 Captain Q." The person responding to Toney's request signed the document, but the signature is illegible. The Court will assume for the purpose of this motion that the Form-9 was intended for Quidichay and that Quidichay provided the written response.

his morning meals were served after dawn on all but three to five days. Furthermore, Toney alleges that he abstained from eating his morning meal every day it was delivered after dawn.

After Ramadan had concluded in 2015, Toney appealed Unit Team Martin's disposition to Heimgartner, who responded that based on his review no further action was necessary. Months later, Toney raised this issue again with Heimgartner, this time informally and in-person. Toney alleges that Heimgartner was dismissive of his informal complaint. Although Toney makes the general comment that "[t]here was no change in Ramadan procedures," nowhere does Toney allege in his Third Amended Complaint, or in any of his preceding Complaints, that he was denied a timely meal during Ramadan any year after 2015.

**B.    Procedural History**

Proceeding pro se, Toney initiated this lawsuit by filing his original complaint in August 2015. In February 2016, Toney asked the Court for leave to file a supplemental complaint. The Court, treating Toney's request as a motion to amend the original complaint, granted the motion. In December 2016, Toney again asked the Court for leave to file a supplemental complaint. The Court ordered Toney to condense his original complaint (Doc. 1), his amended complaint (Doc. 12), and his proposed supplemental complaint (Doc. 37) "into a single document that sets forth all of the defendants and claims." Toney then filed his Second Amended Complaint (Doc. 42).

Toney's Second Amended Complaint raised a wide array of claims against several defendants, including a First Amendment claim against Defendants Heimgartner and Quidichay. Toney's Second Amended Complaint requested monetary damages and several forms of injunctive relief. Heimgartner, Quidichay, and three other defendants filed a Motion to Dismiss Toney's Second Amended Complaint. On October 20, 2017, the Court granted in part and denied in part

the motion.[4]  Specific to Heimgartner, the Court dismissed all claims for monetary damages. Heimgartner's motion did not request dismissal of Toney's claims for injunctive relief, and the Court made no ruling on those claims.  Specific to Quidichay, the Court held that Toney "sufficiently stated a First Amendment violation against Quidichay for interfering with Toney's Ramadan meals and that claim survives the motion to dismiss."[5]  All other claims for monetary damages against Quidichay were dismissed.  Quidichay also never requested dismissal of Toney's claims for injunctive relief, and the Court accordingly did not rule on those claims.

On November 16, 2017, Toney, appearing before the Magistrate Judge, made an oral motion to appoint counsel.  The Magistrate Judge granted the motion and appointed Toney counsel on December 21, 2017.  On March 2, 2018, Toney, through his newly appointed counsel, filed a Motion to Amend his Second Amended Complaint.  Toney sought permission to condense his claims, to add a state law medical malpractice claim against Defendants Gordon Harrod and Travis Nickelson, and to bring Corizon, which had previously been dismissed from the case, back into the lawsuit.  The Magistrate Judge granted Toney's request to add a medical malpractice claim, denied Toney's request to bring Corizon back into the lawsuit, and ordered Toney to file his Third Amended Complaint.

Toney filed his Third Amended Complaint, in which he condensed his allegations into the three claims now before the Court.  In contrast to his Second Amended Complaint, Toney did not specifically request any injunctive relief in his Third Amended Complaint.  Instead, Toney only

---

[4] *See Toney v. Harrod*, 2017 WL 4758962 (D. Kan. 2017).

[5] *Id.* at *10.

requested "a judgment in excess of $75,000, plus his costs, attorney fees, and any further relief this Court would deem just or equitable."

Defendants Heimgartner and Quidichay then filed this Motion to Dismiss. Heimgartner relies exclusively on the arguments he put forth in his Motion to Dismiss Toney's Second Amended Complaint, as well as the Court's Memorandum and Order granting in part and denying in part that Motion. Quidichay argues, for the first time, that he is entitled to qualified immunity on Toney's First Amendment claim, and he seeks dismissal on that basis.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails "to state a claim upon which relief can be granted." Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[6] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[8] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[9] All well-pleaded facts are assumed to be true and

---

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[8] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[9] *Iqbal*, 556 U.S. at 679.

are construed in the light most favorable to the non-moving party.[10] "Although plaintiff need not allege every element of [its] action in specific detail, [it] cannot rely on conclusory allegations."[11]

III. Analysis

A. **Defendant Heimgartner**

Heimgartner requests dismissal of all Toney's claims for monetary damages. Heimgartner relies exclusively on the arguments he raised in his Motion to Dismiss Toney's Second Amended Complaint, and on the Court's order granting dismissal of all such claims.[12] Toney, in response, makes the unusual argument that Heimgartner's Motion "should be denied because it has already been granted." Toney argues that because the Court dismissed all his claims for monetary damages against Heimgartner, the issue has been fully settled, and the law of the case doctrine forbids reconsideration of this issue.[13] Toney's reliance on this doctrine, however, is odd for at least two reasons. First, Heimgartner is not seeking reconsideration of issues already resolved. To the contrary, Heimgartner is asking for consistency with regards to the Court's prior ruling. And second, Toney evidently agrees with Heimgartner's principal point, which is that Toney has no remaining claims against Heimgartner for monetary damages. The Court fails to see how arguing

---

[10] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[11] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[12] *See Toney v. Harrod*, 2017 WL 4758962 (D. Kan. 2017).

[13] The "[l]aw of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016). Without this doctrine, "an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again. A system like that would reduce the incentive for parties to put their best effort into their initial submissions on an issue, waste judicial resources, and introduce even more delay into the resolution of lawsuits . . . ." *Id.*

that Heimgartner's Motion "should be denied because it has already been granted" serves any purpose. Rather, it strikes the Court as being needlessly argumentative.

Furthermore, although Toney takes exception to Heimgartner rehashing issues the parties and the Court have already covered, the Court considers Heimgartner's decision to reassert his prior defenses to be entirely reasonable. Toney's Third Amended Complaint, which supersedes all his prior complaints,[14] brings largely the same allegations against Heimgartner that were contained in his Second Amended Complaint. The only request for relief Toney makes in his Third Amended Complaint is "for a judgment in excess of $75,000, plus his costs, attorney fees, and any further relief this Court would deem just or equitable."[15] Upon review of the Third Amended Complaint, it certainly appears that Toney is still seeking monetary damages. That said, the shortcomings in Toney's Second Amended Complaint apply equally to his most recent Complaint. So, to the extent that Toney's Third Amended Complaint can be construed as bringing claims for monetary damages against Heimgartner, the Court grants Heimgartner's Motion to Dismiss for the same reasons the Court dismissed all such claims in Toney's Second Amended Complaint.[16]

**B.    Defendant Quidichay**

Quidichay argues for the first time in this lawsuit that he is entitled to qualified immunity on Toney's claims. It is well-settled that "[i]ndividual defendants named in a § 1983 action may

---

[14] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180 (10th Cir. 2015) (citations omitted).

[15] In contrast, Toney's first three complaints, in addition to seeking monetary damages, requested a variety of injunctive relief related to the prison's policies and training protocols.

[16] *See Toney*, 2017 WL 4758962, at *7 (holding that Toney inadequately alleged Heimgartner possessed the requisite culpable state of mind for a First Amendment claim).

raise a defense of qualified immunity."[17] "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[18] Although the "typical vehicle" for asserting a qualified immunity defense is a summary judgment motion, the Court will also review it on a motion to dismiss.[19] When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[20] The Court has already ruled in this case that Toney adequately alleged a First Amendment violation against Quidichay for failing to accommodate his religious beliefs during Ramadan.[21] Quidichay's Motion focuses on the second-prong of the qualified immunity test, arguing that Toney's right to this religious accommodation was not clearly established at the time of the alleged deprivation.

Whether a right is clearly established often depends on how broadly or narrowly that right is defined. The Supreme Court has admonished courts "not to define clearly established law at a high level of generality."[22] Instead, the right's "contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' "[23] Although there does not have to be "a case directly on point for a right to be clearly established, existing

---

[17] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[18] *Id.* (citations and quotations omitted).

[19] *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[20] *Cillo*, 739 F.3d at 460.

[21] *Toney*, 2017 WL 4758962, at *4–5, *7–8.

[22] *Ashcroft*, 563 U.S. at 742.

[23] *Id.*

precedent must have placed the statutory or constitutional question beyond debate."[24] In deciding if a right is clearly established, the Court looks to Supreme Court and Tenth Circuit precedent, as well as the "weight of authority from other courts."[25] "While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability."[26]

Toney argues, relying on *Makin v. Colorado Department of Corrections*,[27] that under "binding Tenth Circuit precedent . . . the constitutional right to a religious meal accommodation was clearly established in 1999." Quidichay argues in response that Toney is framing the question too broadly. Quidichay contends that the appropriate question is "whether there was a clearly established constitutional right to a pre-dawn meal, rather than a pre-sunrise meal, during Ramadan." Quidichay cites an unpublished Ninth Circuit opinion and a ruling from the United States District of Nevada for the proposition that the law is not clearly established that a Muslim inmate is entitled to a pre-dawn mean during Ramadan.[28] The Court concludes that under Tenth Circuit law Toney's position is the correct one.

Even before the Tenth Circuit's opinion in *Makin*, the Tenth Circuit made clear that under the First Amendment an inmate is entitled to adhere to a diet that is based on sincerely held

---

[24] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citations, alterations, and quotations omitted).

[25] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

[26] *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (internal quotation omitted).

[27] 183 F.3d 1205 (10th Cir. 1999).

[28] *See Maloney v. Ryan*, 711 F. App'x 372, 373 (9th Cir. 2017); *Johnson v. Lopez*, No. 2018 WL 1567351, at *4 (D. Nev. 2018).

religious beliefs.[29] The key consideration is the inmate's sincerity.[30] It is not uncommon for members of a particular religion to have some variation in their beliefs and practices, and "the guarantees of the First Amendment are not limited to beliefs shared by all members of a religious sect."[31] Indeed, " '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.' "[32]

In *Makin*, the Tenth Circuit held that a Muslim inmate's First Amendment rights were violated when the prison implemented a policy in which all inmates in punitive segregation were exempted from meal accommodations. Specifically, the policy stated that "[d]uring the month of Ramadan inmates in segregation will be unable to participate in special feeding activities. . . ."[33] Meals were instead provided "through the usual meal delivery system," which meant all meals were delivered "after dawn and prior to sunset."[34] The Tenth Circuit held that the policy infringed on the inmate's religious beliefs, and that the prison failed to justify the infringement with any legitimate penological interests.[35]

---

[29] *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (stating that an inmate's "genuine and sincere belief in religious dietary practices warrants constitutional protection"); *see also Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) ("This circuit recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs."); *Ind v. Wright*, 52 F. App'x 434, 439 (10th Cir. 2002) (recognizing that in the Tenth Circuit "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,' even if such dietary practices are not doctrinally 'required' by the prisoner's religion").

[30] *LaFevers*, 936 F.2d at 1119.

[31] *Id.*

[32] *Makin*, 183 F.3d at 1213 (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)).

[33] *Id.* at 1208.

[34] *Id.*

[35] *Id.* at 1214.

Quidichay argues that Toney's reliance on *Makin* is misplaced, noting that in *Stewart v. Beach*[36] the Tenth Circuit "affirmed a District Court decision rejecting a broad definition of the constitutional right at issue under *Makin* and applying a narrower definition." Although Quidichay's description of *Stewart* is accurate, the opinion is not particularly helpful to his position. The issue in *Stewart* was whether a prison violated a Rastafarian inmate's First Amendment rights by requiring him to cut his hair for security reasons. In *Stewart*, the inmate cited *Makin* as clearly establishing an incredibly broad "right to reasonably exercise one's religion in prison."[37] The Tenth Circuit held that this standard was not sufficiently particularized and affirmed the district court's determination that the proper question was "whether it was clearly established that [the defendants] violated [the plaintiff's] First Amendment free exercise right by requiring him to cut his hair for security reasons."[38] *Makin*, which concerned a Muslim inmate's access to meal accommodations during Ramadan, had nothing to do with prison grooming regulations, so it was not helpful to the plaintiff in *Stewart*. But here, Toney is not relying on *Makin* as establishing a broad "right to reasonably exercise one's religion in prison." Rather, Toney's reliance on *Makin* is particularized to the right he seeks to vindicate, namely the right to adhere to his religious fasting during Ramadan.

The Court is not persuaded by Quidichay's position that Toney needs authority specifically stating that an inmate has a First Amendment right to receive Ramadan meals before dawn instead of before sunrise. For a law to be clearly established, the facts in the precedential cases need not

---

[36] 701 F.3d 1322 (10th Cir. 2012).

[37] *Stewart*, 701 F.3d at 1330.

[38] *Id.*

be identical; they need only be sufficiently analogous that a reasonable official would understand that his conduct was unlawful in that situation.[39] Based on *Makin*, as well as other authority from the Tenth Circuit establishing that an inmate has a First Amendment right to have sincerely held religious dietary beliefs accommodated,[40] the Court concludes that a reasonable official would have known that denying Toney's request to have his Ramadan meals delivered early enough to accommodate his religious fasting would run afoul of the First Amendment.

Neither is the Court persuaded by Quidichay's argument that he is entitled to qualified immunity because EDCF's policy was intended to accommodate Muslim inmates' right to fast during Ramadan, not infringe on that right. Ramadan began June 18, 2015, and lasted for 30 days. On June 20, 2015, Toney informed Quidichay in writing that the policy was not adequately accommodating his religious beliefs. Toney explained that his religious beliefs require that he start his fast at dawn, which is approximately an hour and a half before sunrise. On June 29, 2015, Quidichay responded to Toney in writing, stating "procedure dictates that you receive your meal prior to sunrise or before daylight." Thus, Quidichay was put on notice that Toney's religious beliefs were being infringed upon and had, at a minimum, 18 days to take remedial measures before Ramadan 2015 ended, yet he failed to take any corrective action. Because Quidichay was made aware of the policy's shortcomings, he cannot hide behind the policy's good intentions.

As a final matter, the Court recognizes that operating a prison is not an easy task. It is not uncommon for a prison regulation to come into conflict with an inmate's constitutional rights, and in those situations " 'prison-official defendants may identify the legitimate penological interests

---

[39] *Estate of Reat v. Rodriguez*, 824 F.3d 960, 965 (10th Cir. 2016).

[40] *Beerheide*, 286 F.3d at 1185; *Ind*, 52 F. App'x at 439; *LaFevers*, 936 F.2d at 1119.

that justified the impinging conduct,' and the court must apply a balancing test to determine the reasonableness of the regulation."[41] At no point in this litigation has Quidichay provided any reason that accommodating Toney's religious beliefs would be unreasonably burdensome to EDCF. Toney claims that accommodating his religious beliefs could have been as simple as serving him breakfast before EDCF's non-Muslim inmates. Indeed, Toney alleges that EDCF provided breakfast in this manner for years, and Quidichay is silent on why EDCF decided to deviate from this practice in 2015. Because Quidichay has not identified *any* legitimate penological reason for changing this procedure, the Court concludes that EDCF's interests do not outweigh Toney's right to religious accommodation. It was clearly established that Toney was entitled to adhere to his religious diet. The Court therefore holds that Quidichay is not entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that Defendants Heimgartner and Quidichay, Jr's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 85) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 11th day of February, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[41] *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218–19 (10th Cir. 2007)); *see also Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (identifying four factors relevant to whether penological interests justify the conduct burdening the inmate's free exercise).