# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL M. TONEY,

    *Plaintiff,*

vs.

Case No. 15-3209-EFM-TJJ

GORDON HARROD, et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Michael Toney is an inmate who at all times relevant to this litigation was held at the El Dorado Correctional Facility ("EDCF"), in El Dorado, Kansas. Toney alleges that during his incarceration an EDCF officer, Zocory Sullivan, used excessive force against him in violation of the Eighth Amendment. Sullivan filed this present Motion to Dismiss, arguing that Toney alleged insufficient facts to support a constitutional violation and that Sullivan is entitled to qualified immunity. For the reasons explained below, Defendant Zocory Sullivan's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 113) is denied.

# I. Factual and Procedural Background[1]

Although the Court has discussed in some detail the factual and procedural history of this case in prior orders,[2] this is the first time Sullivan's role in this litigation has been brought for the Court's consideration. Toney has just one claim against Sullivan—an Eighth Amendment claim for excessive force—arising from a single incident. Given the discrete nature of Toney's allegations against Sullivan, the Court will not reiterate all the facts relevant to this lawsuit, but will limit itself to just the facts pertinent to Toney's Eighth Amendment claim against Sullivan.

On June 13, 2016, Toney was in his prison cell when Sullivan and another EDCF officer approached Toney's cell. Toney informed Sullivan that his dinner was served cold and that he still needed the rest of his meal and his medication. Toney claims that Sullivan angrily yelled back "your food was not cold, we just got it out of the warmer. We gave you all your meal. You have to wait until I'm done passing out the rest of the trays before you get meds. I'm training the new guy." Sullivan's co-worker told Sullivan that they still needed to give Toney his breakfast sack for the following morning. Toney began speaking with an EDCF medical staff member when Sullivan interrupted their conversation, asking "You done? You done?" Toney did not respond to Sullivan's question. Sullivan then opened the food port to Toney's cell, and Toney placed a cup outside the food port to receive his medication. Toney looked out the food port and told Sullivan: "you better watch how you talk to me." Sullivan immediately slammed the food port door shut

---

[1] The facts are taken from Toney's Third Amended Complaint and are accepted as true for the purposes of this ruling.

[2] *See Toney v. Harrod*, 2019 WL 529294, at *1–3 (D. Kan. 2019); *Toney v. Harrod*, 2017 WL 4758962, at *1–2 (D. Kan. 2017).

onto the back of Toney's right hand. Toney pushed the food port door open, freeing his hand; Sullivan then reached inside Toney's cell and sprayed Toney with mace. Toney alleges that "[t]his incident took place in about thirty seconds from the time the food port came open."

Toney claims that his Eighth Amendment right to be free of cruel and unusual punishment was violated when Sullivan slammed the food port door on his hand, causing a cut on the back of his hand, and when Sullivan sprayed him with mace, burning Toney's skin and irritating his eyes, nose, mouth, and throat. Sullivan filed this Motion to Dismiss Toney's Eighth Amendment claim.

## II. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails "to state a claim upon which relief can be granted." Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4] The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[5] In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[6] All well-pleaded facts are assumed to be true and

---

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[5] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[6] *Iqbal*, 556 U.S. at 679.

are construed in the light most favorable to the non-moving party.[7]  Although a plaintiff need not allege every element of his action in specific detail, he cannot rely on conclusory allegations.[8]

### III.     Analysis

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishments.  An inmate's Eighth Amendment rights are implicated when a prison official subjects the inmate to excessive force.[9]  To determine if an act of force is excessive under the Eighth Amendment, courts undergo a two-part inquiry.  The first part "asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."[10]  The second part is a subjective question that asks whether the alleged offender "acted with a sufficiently culpable state of mind."[11]  Under the objective prong, an excessive force claim cannot succeed if the use of force is both *de minimis* and "not of a sort repugnant to the conscience of mankind."[12]  The focus is on the "nature of the force" used, not merely the seriousness of the inmate's injury.[13]  Under the subjective prong, "[a]n official has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline."[14]

---

[7] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[8] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[9] *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

[10] *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (citation omitted).

[11] *Id.* (citation omitted).

[12] *Brosh v. Duke*, 616 F. App'x 883, 888 (10th Cir. 2015) (citation omitted).

[13] *Graham v. Sherriff of Logan Cty.*, 741 F.3d 1118, 1123 (10th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

[14] *Sayed v. Virginia*, 744 F. App'x 542, 549 (10th Cir. 2018) (citation and quotations omitted).

Here, Sullivan argues he is entitled to qualified immunity on Toney's claims; he also challenges the legal sufficiency of Toney's allegations. When a defendant raises a qualified immunity defense, the burden then shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[15] Therefore, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation."[16] If a prison official is entitled to qualified immunity, that official is shielded from liability for monetary damages.[17]

### A. Constitutional Violation for Slamming the Food Port Door

Turning first to the allegation that Sullivan slammed the food port door onto Toney's hand. Toney certainly alleges that Sullivan used force against him; however, the Eighth Amendment is not implicated every time a prison official uses force against an inmate. The Supreme Court instructs that not every "malevolent touch by a prison guard gives rise to a federal cause of action" and that the Eighth Amendment necessarily excludes all *de minimis* uses of force that are not repugnant to mankind.[18]

Tenth Circuit caselaw further illuminates this principle. In *Rhoten v. Werholtz*,[19] the circuit determined that a prisoner's allegations that a prison official slammed the inmate against the wall,

---

[15] *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016) (citation and quotations omitted).

[16] *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citation omitted).

[17] *Iqbal*, 556 U.S. at 672.

[18] *Hudson*, 503 U.S. at 9–10 (1992) (citation omitted).

[19] 243 F. App'x 364 (10th Cir. 2007).

-5-

squeezed his nipples and buttocks, and pulled on his testicles firmly, causing great pain, constituted *de minimis* force and were insufficient to state an excessive force claim.[20] In *Norton v. The City of Marietta*,[21] the Tenth Circuit held that grabbing and twisting an inmate's neck was not objectively harmful enough to establish an Eighth Amendment excessive force claim.[22] And in *Marshall v. Mulyard*,[23] the Tenth Circuit held that it was *de minimis* use of force when a prison official grabbed an inmate and dug his fingernails into the inmate's arm.[24] Additionally, courts outside the Tenth Circuit have found uses of force highly similar to what was alleged here not to run afoul of the Eighth Amendment.[25] The weight of authority from these cases persuades the Court that Toney's allegation falls into the *de minimis* use of force category, which is necessarily excluded from Eighth Amendment consideration.

**B.     Constitutional Violation for Use of Pepper Spray**

The Court next considers Toney's allegation that Sullivan discharged pepper spray into his prison cell. Similar to the first allegation, Sullivan asserts that discharging pepper spray is a *de minimis* use of force. To support this assertion, Sullivan relies on the Tenth Circuit's decision in

---

[20] *Id.* at 365, 367.

[21] 432 F.3d 1145 (10th Cir. 2005).

[22] *Id.* at 1156.

[23] 415 Fed.App'x. 850.

[24] *Id.* at 853.

[25] *See Johnson v. Moody*, 206 F. App'x 880, 885 (11th Cir. 2006) (holding that a prison official pushing or kicking a food tray door onto an inmate's hand was a "relatively minor amount of force" that did give rise to an Eighth Amendment claim); *Hill v. Kelly*, 1997 WL 638402, at *1 (E.D. Pa. 1997) (holding that when a prison official quickly closed a cell block door on an inmate's hand, causing a cut and crushing bruise on the back of the inmate's thumb, this was "the kind of de minimis imposition with which the Constitution is not concerned").

*Gargan v. Gabriel*.²⁶ But Sullivan's reliance on *Gargan* is unpersuasive. In *Gargan*, an inmate alleged that prison officials sprayed the inmate with pepper spray during a cell extraction. The Tenth Circuit affirmed dismissal of the inmate's Eighth Amendment claim because the inmate's complaint contained no facts discussing the need, or lack thereof, of using pepper spray during the extraction. Without allegations explaining the context surrounding the use of force, the Tenth Circuit could not conclude that the use of pepper spray was excessive under the circumstances. *Gargan*'s holding supports the position that utilizing pepper spray may be a valid use of force under certain circumstances. It does not, however, state that using pepper spray is a *de minimis* use of force that would never implicate Eighth Amendment protections.

That the use of pepper spray is not inherently a *de minimis* use of force is supported by additional Tenth Circuit caselaw. In *Norton v. The City of Marietta, OK*,²⁷ the Tenth Circuit stated that "pepper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force."²⁸ And in *DeSpain v. Uphoff*²⁹ the Tenth Circuit held that an inmate could bring his Eighth Amendment claim to a jury when he presented evidence that a prison official discharged pepper spray in the prison as a practical joke.³⁰ Whether the use of pepper spray is objectively harmful under the Eighth Amendment "turns in part on how long

---

²⁶ 50 F. App'x 920 (10th Cir. 2002).

²⁷ 432 F.3d 1145 (10th Cir. 2005).

²⁸ *Id.* at 1154 (alteration omitted).

²⁹ 264 F.3d 965 (10th Cir. 2001).

³⁰ *Id.* at 979–80.

[the inmate] was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily."[31]

Here, Toney provides no insight into the extent of Sullivan's use of pepper spray or whether Toney was deprived the opportunity to properly irrigate himself after he was sprayed. He merely states that "Sullivan pulled his mace out, stuck it inside [Toney's] cell and sprayed [Toney] with chemicals." Toney states that he experienced a burning sensation on his skin and irritation of his eyes, nose, mouth, and throat. Although it is possible Sullivan's use of pepper spray was so minor that it would not meet the Eighth Amendment's objectively harmful test, the Court concludes that Toney's allegations plausibly state a claim that Sullivan's actions were objectively harmful enough to violate Toney's Eighth Amendment rights.

The next question is whether Toney adequately alleged that Sullivan possessed the requisite subjective intent when he discharged the pepper spray into his cell. The core inquiry here is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[32] The following factors should be considered in deciding if force was applied in good-faith or to cause harm: (1) the extent of the inmate's injury, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, (5) and any efforts made to temper the severity of a forceful response.[33]

---

[31] *Norton*, 432 F.3d at 1154.

[32] *Lewis v. Carrell*, 2013 WL 593663, at *6 (D. Kan. 2013) (citing *Hudson*, 503 U.S. at 5–7).

[33] *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (citations omitted).

Under the first factor, Toney's alleged injuries from the discharge of pepper spray are that his skin was burning and his eyes, nose, mouth, and throat were irritated. Toney does not indicate how long these symptoms lasted. Based simply on the limited nature of Toney's injuries, the Court cannot conclude that Sullivan must have acted maliciously or sadistically. So, this factor does not weigh in Toney's favor.

The second factor, however, does weigh in Toney's favor. Sullivan argues that he used pepper spray as a compliance measure to force Toney to leave the food port door closed. But Sullivan never ordered Toney to leave the food port door closed, and Toney alleges he only opened the door to free his trapped hand. Unless Sullivan ordered Toney to leave the food port door closed and Toney was noncompliant with that order, Sullivan's assertion that force was necessary to coerce Toney into compliance is unfounded.

The third factor requires the Court to consider the relationship between the need to use force and the amount of force used. Because it is doubtful this incident required Sullivan to use *any* amount of force, Sullivan's use of pepper spray exceeded what was necessary under the circumstances. Thus, this factor weighs in Toney's favor.

The fourth factor likewise favors Toney. Toney told Sullivan—after the two had a verbal disagreement over the temperature of Toney's food— "you better watch how you talk to me." When Sullivan responded by shutting the food port door, Toney pushed the food port door back open to free his trapped hand. It was at that point that Sullivan discharged pepper spray into Toney's cell. Even if Sullivan interpreted Toney's words as a serious threat, and understood Toney pushing the food port door open as an act of aggression, Toney was locked in his cell during the entire altercation. Because Toney was confined in his cell at the time of the incident, it would not be reasonable for Sullivan to believe that Toney posed an immediate threat to anyone's safety.

Finally, under the fifth factor, the Court considers any efforts made by Sullivan to temper the severity of a forceful response. This factor also weighs in Toney's favor. Sullivan never attempted to diffuse the situation or ensure compliance using tactics other than force. This incident—an inmate, who was confined in his cell, pushing a food port door open—was not so serious to warrant an immediate forceful response without first attempting a more peaceful resolution.

Four of the five factors suggest that Sullivan did not act in good-faith to maintain or restore discipline, but with a deliberate intent to cause harm. None of this is to say that Sullivan necessarily acted in bad-faith. But the Court holds that Toney's allegations—when accepted as true—make a plausible showing that Sullivan acted with a sufficiently culpable state of mind to state an excessive force claim. The Court therefore holds that Toney has met his burden under the first prong of the qualified immunity test.

**C.    Clearly Established Law**

Under the second prong of the qualified immunity test, Sullivan is entitled to immunity unless his alleged actions violated a clearly established right. "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[34] In determining whether a right is clearly established, the Court looks for a Supreme Court or Tenth Circuit case that is sufficiently on point, or the clearly established weight of authority from other courts.[35] "Ultimately, existing precedent

---

[34] *Stevenson v. Cordova*, 733 F. App'x 939, 943–44 (10th Cir. 2018) (citation omitted).

[35] *Id.* at 944 (citation omitted).

must have placed the statutory or constitutional question beyond debate."[36] The facts of the cases compared need not be identical, but they must be "sufficiently analogous to satisfy the particularized context necessary to support liability."[37]

Toney argues that the right to be free from excessive force involving pepper spray has been clearly established since 2001, relying on the Tenth Circuit's *DeSpain* decision. In *DeSpain* the plaintiff alleged, among other things, that a prison guard intentionally and indiscriminately discharged pepper spray as a practical joke while walking outside the prison tier that housed the plaintiff. The Tenth Circuit stated it would "not require inmates to be subjected to the malicious whims of prison guards" and that the unwarranted use of pepper spray against an inmate is unlawful under the Eighth Amendment.[38]

Sullivan argues that *DeSpain* is not sufficiently on point with this case to clearly establish that Sullivan's alleged conduct was unlawful. There are certainly factual differences between Toney's allegations against Sullivan and the prison guard's conduct in *DeSpain*. Most notably, the guard in *DeSpain* discharged the pepper spray as a practical joke. No such accusation exists here. *DeSpain* is sufficiently analogous, however, that any reasonable prison official would have known that the unwarranted and malicious use of pepper spray against an inmate in a locked cell would violate the Eighth Amendment. Because Toney has sufficiently alleged as much, the Court holds that Sullivan is not entitled to qualified immunity at the motion to dismiss stage.

---

[36] *Id.* (citation and quotations omitted).

[37] *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (internal quotation omitted).

[38] *Id.* at 978.

**D.     Failure to State a Claim**

As a final matter, Sullivan also argues that Toney's complaint fails to state an Eighth Amendment claim. Sullivan's argument is based on his contention that discharging pepper spray constitutes a *de minimis* use of force and, accordingly, does not implicate Eighth Amendment protections. For reasons the Court has already discussed above, this argument fails.

**IT IS THEREFORE ORDERED** that Defendant Sullivan's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 113) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 13th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE