## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL M. TONEY,

       *Plaintiff,*

  vs.

JESS QUIDICHAY, JR. and
ZACORY SULLIVAN,

       *Defendants.*

Case No. 15-3209-EFM

## MEMORANDUM AND ORDER

Plaintiff Michael Toney is a prisoner who at all times relevant to this litigation was incarcerated at El Dorado Correctional Facility ("EDCF").  He sues Defendants Jess Quidichay, Jr., and Zacory Sullivan under 42 U.S.C. § 1983 alleging violations of his First and Eighth Amendment rights.  Quidichay and Sullivan have each moved for summary judgment on Toney's claims on the basis that they are entitled to qualified immunity.  For the following reasons, the Court grants Quidichay's Motion for Summary Judgment (Doc. 198) and denies Sullivan's Motion for Summary Judgment (Doc. 200).[1]

---

[1] Toney filed a Motion for Oral Argument (Doc. 207) regarding Defendants' Motions for Summary Judgment.  The Court sees no need for oral argument on Defendants' motions.  Therefore, Toney's motion is denied.

## I.   Factual and Procedural Background

This protracted litigation began in August 2015 when Toney filed suit against several EDCF employees alleging constitutional violations related to his incarceration.  Since that time, Toney has amended his Complaint three times, and the Court has ruled on two rounds of motions to dismiss.   Toney's remaining claims are (1) a First Amendment claim against Defendant Quidichay for failing to provide Toney meals in a way that would accommodate his religious beliefs and (2) an Eighth Amendment claim against Defendant Sullivan for excessive use of force based on Sullivan's use of pepper spray.  The Court will first set forth the uncontroverted facts as to Toney's First Amendment claim and then as to his Eighth Amendment claim.

### A.   Toney's Free Exercise Claim

Toney has been a practicing Muslim since 2005.  Every year Toney fasts from dawn to sunset during the month of Ramadan.  Muslim inmates at EDCF are served two meals during Ramadan—an early breakfast and a late dinner—and each meal contains larger portions than normal.  For years, EDCF practice was to serve breakfast during Ramadan to Muslim prisoners before non-Muslim prisoners.  But, on the first day of Ramadan in 2015, that practice changed for prisoners in administrative segregation, which is where Toney was held at all times relevant to this case.  On June 18, 2015, EDCF officers did not serve Toney his morning meal until after he began his fast.  The officer serving breakfast informed Toney that Muslim prisoners "only needed to be fed before sunrise."

On June 20, 2015, Toney submitted a "Form-9" complaint to Defendant Quidichay.  In his complaint, Toney explained that his religious beliefs obligate him to begin fasting at dawn, approximately one and a half hours before sunrise.  Toney requested that he and all Muslim inmates in administrative segregation be served breakfast before the other inmates, as had been the

practice for years and was still the practice for Muslim inmates in general population. Toney submitted the Form-9 to Quidichay because he was the night Captain, and thus the decision-maker during that time period at EDCF. Because Quidichay previously handled problems for Toney at EDCF, Toney knew that Quidichay could "get things done" and expected him to fix this problem. On June 29, 2015, Quidichay responded to Toney's complaint in writing, stating that "procedure dictates you receive your meal prior to sunrise or before daylight." Toney never received a copy of this procedure.

During the 30 days of Ramadan in 2015, Toney's breakfast was served after dawn all but three to five days. Toney abstained from eating breakfast on the days his meal arrived late. Toney lost 10 to 15 pounds during Ramadan that year. Additionally, he experienced headaches, dizziness, low energy, weakness, and disrupted sleep. Toney believes that the lack of nutrition aggravated his preexisting high blood pressure.

## B.      Toney's Excessive Force Claim

### 1.      *Compliance with D. Kan. Rule 56.1*

The required rules for summary judgment motions in the District of Kansas are set forth in D. Kan. Rule 56.1. Under that rule, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[2]  D. Kan. Rule 56.1(b) addresses opposing motions for summary judgment. It states:

(b) Opposing Memorandum

(1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party

---

[2] D. Kan. Rule 56.1(a).

contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

(2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

Neither party complies with this Rule. First, Toney fails to properly controvert the material facts set forth by Sullivan. He does not identify which portion of Sullivan's factual paragraphs he intends to controvert and does not cite to the portions of the record for which he relies upon in controverting them. Additionally, in attempting to controvert Sullivan's facts, he cites to paragraphs within the additional statement of facts set forth in his response brief. These paragraphs, however, are not related and thus do not controvert Sullivan's stated facts.

Likewise, Sullivan fails to properly controvert the facts set forth in Toney's response brief. When responding to Toney's additional statement of facts, Sullivan states "Controverted. (Defendants supplemental responses to Plaintiff's First Request for Production of Documents)." But, Sullivan cannot base his reply to Toney's additional statement of facts on his responses to a request for production of documents. Rule 56.1(d) provides that "[a]ll facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admission." Notably, the Rule does not state that responses may be based on records produced in response to requests for production of documents. Additionally, Sullivan fails to point out with particularity which portion of Sullivan's responses to the request for production on which he relies. The responses to the request for production consist of 26 pages of documents. Although this is

not an overly voluminous number of pages, the Court will not sift through the record in an attempt to locate arguments for the parties.[3]

Because of the deficiencies in the parties' briefing, the facts regarding the altercation between Toney and Sullivan are largely disputed. The Court will set forth the undisputed facts first and then each parties' factual allegations.

> 2.    *Facts*

On the morning of June 13, 2016, Toney woke up and went to his cell door and saw two officers he had not previously seen working in the cell house. He later learned that one of them was Defendant Sullivan. Toney called out the door and told the officers that he needed his food. One of the officers yelled back that they just got the food in and would be passing it out shortly. Toney then yelled that he was Muslim and needed his food and medication before a certain time. He was told they would get to him as soon as they could.

Sullivan and the other officer then walked around the cell house passing out the rest of the inmates' food and medication before arriving at Toney's cell. As the officers approached him, Toney called out to them several times that it was running out of time for him to get his food. After he received his food, Toney told Sullivan that he did not receive all of it and the food they gave him was cold.

The parties dispute what occurred next. Toney contends that after he told Sullivan that he did not receive all of his food, Sullivan responded "we gave you all your food and we just took that food out of the warmer." According to Toney, this was false and Sullivan knew it. When

---

[3] *Boldridge v. Tyson Foods, Inc.*, 2007 WL 1299197, at *2 (D. Kan. 2007) ("On a motion for summary judgment, the [C]ourt will not marshal the evidence for a party.").

Sullivan opened the food port slot, Toney sat the medicine cup down with his left hand, smacked the food port door with his right hand, and pointed it at Sullivan and stated, "That is no way to speak to me." Sullivan then slammed the food port door on Toney's hand, knocking the medicine cup down and trapping his hand. Toney then pushed the door off his hand and stuck his arm out in an instinctive attempt to reach at Sullivan. The food port door is very small, and Toney could not have reached Sullivan. Sullivan then reached for his pepper spray. Toney backed up and away from the cell door. Sullivan put his hand in the cell with the pepper spray and started spraying without warning. Sullivan sprayed Toney twice. Toney was later escorted to the shower and then the medical clinic.

Sullivan contends that after he unlocked the food port door, Toney reached through the hole and tried to grab him. He ordered Toney to go to the back of his cell. Toney refused. Sullivan then repeated the order and warned Toney that he would be sprayed if he did not comply. Toney refused and continued yelling and attempting to grab Sullivan. Sullivan then deployed a two second burst of pepper spray to subdue Toney and obtain compliance. After he was finished, he called for staff assistance. Toney was restrained and taken to the showers for decontamination. He was later escorted to the clinic, found to be uninjured, and returned to his cell.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered

---

[4] Fed. R. Civ. P. 56(a).

evidence permits a reasonable jury to decide the issue in either party's favor.[5]  The movant bears

the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6]

If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must

instead "set forth specific facts" that would be admissible in evidence in the event of trial from

which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified

through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone

cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable

inferences in the light most favorable to the party opposing summary judgment.[9]

### III.    Analysis

Quidichay and Sullivan both assert that they are entitled to summary judgment based on

the defense of qualified immunity.  It is well established that "[i]ndividual defendants named in a

§ 1983 action may raise a defense of qualified immunity."[10]  "The doctrine of qualified immunity

shields public officials . . . from damages actions unless their conduct was unreasonable in light

of clearly established law."[11]  When the defense of qualified immunity is asserted, the burden shifts

to the plaintiff to show:  "(1) that the defendant's actions violated a federal constitutional or

---

[5] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015) (citation omitted).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[11] *Id.* (quotation and citation omitted).

statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[12]   The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[13]   "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant[s] qualified immunity."[14]

## A.   Quidichay's Motion for Summary Judgment

Quidichay argues that Toney cannot establish either element of the qualified immunity analysis.   First, he argues that Toney cannot establish a First Amendment violation because Quidichay did not act with a sufficiently culpable state of mind and because he was not personally involved in the violation.   Second, Quidichay argues that Toney cannot establish a violation of a clearly established constitutional right.

### 1.   *Constitutional Violation*

Quidichay argues that Toney cannot prove that that he acted with the requisite intent for a First Amendment violation.   Citing *Gallagher v. Shelton*,[15] Quidichay argues that the culpability standard is a conscious or intentional interference with a constitutionally protected right.[16] However, in 2018, the Tenth Circuit issued its decision in *Ralston v. Cannon* ("*Ralston I*")[17] where it stated in a footnote:   "Although [the defendant] relies on *Gallagher* as setting the relevant

---

[12] *Id*. (citation omitted).

[13] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[14] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

[15] 587 F.3d 1063 (10th Cir. 2009).

[16] *See id*. at 1070 (citing *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983")).

[17] 884 F.3d 1060 (10th Cir. 2018).

parameters of a § 1983 free exercise claim, there is reason to doubt whether 'conscious' interference with an individual's right to free exercise amounts to a viable § 1983 First Amendment claim for damages." [18]  The Circuit further explained that the *Gallagher* standard was in question because of the Supreme Court's decision in *Ashcroft v. Iqbal*.[19]

In *Iqbal*, the Supreme Court considered the validity of a complaint alleging federal officials violated the plaintiff's First and Fifth Amendment rights by subjecting the defendant to harsh conditions of confinement because of race, religion, and national origin.[20]  The Supreme Court found it necessary to set forth "the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity."[21]  The Supreme Court stated, "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."[22]  The Court further stated that "purposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.' "[23]  It requires "a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group."[24]

---

[18] *Id.* at 1063 n.3.

[19] *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[20] *Iqbal*, 556 U.S. at 668-69.

[21] *Id*. at 675.

[22] *Id*. at 676 (citations omitted).

[23] *Id*. (quoting *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

[24] *Id*. at 676-77.

The Supreme Court decided *Iqbal* six months before *Gallagher*, but the *Gallagher* court made no reference to *Iqbal* when adopting and applying the less demanding "conscious or intentional interference" standard.[25]  In *Ralston I*, the Tenth Circuit declined to decide whether the *Gallagher* standard was still applicable in light of *Iqbal* because the issue was not before it on appeal.[26]  To date, the Tenth Circuit has not reconciled these cases.[27]  A review of Tenth Circuit case law, however, reveals that the Circuit has regularly applied the purposeful discrimination standard in § 1983 cases.[28]  Most recently, the Tenth Circuit applied this standard in *Carr v. Zwally*.[29]  In that case, the Circuit concluded that the plaintiff inmate did not adequately allege that the defendant sheriff's deputy acted with a discriminatory purpose when he took the inmate's Bibles and other religious materials from his cell.[30]  The Tenth Circuit stated that although the inmate alleged that the deputy acted "knowingly," "oppressively," and "purposely," the complaint lacked sufficient factual matter to show that the deputy took the items for the purpose of

---

[25] *See Gallagher*, 587 F.3d at 1069-70.

[26] *Ralston I*, 884 F.3d at 1063 n.3.  *Ralston I* was on appeal before the Tenth Circuit based on the district court's denial of qualified immunity to the defendant.  *Id.* at 1065-66.  The Tenth Circuit found that the defendant's appeal amounted to a challenge to the district court's determinations of evidentiary sufficiency and therefore concluded that it lacked jurisdiction.  *Id.* at 1067-68.

[27] The issue of whether the *Gallagher* standard or the purposeful discrimination standard applies to First Amendment free exercise claims was squarely before the Tenth Circuit in *Ralston v. Cannon*, --- F. App'x ---, 2021 WL 3478634 (10th Cir. 2021) ("*Ralston II*") but the Tenth Circuit did not resolve the issue.  *See infra* Part III.A.2.

[28] *See Ralston v. Cannon*, 2019 WL 8223559, at *4-*5 (D. Colo. 2019) (collecting Tenth Circuit cases requiring the plaintiff to allege or show that the defendant acted with purposeful discrimination).  The District of Colorado also correctly observes that there are several Tenth Circuit decisions that apply the *Gallagher* standard post-*Iqbal*, without any discussion of *Iqbal*.  *Id.* at *4 n.2 (citing *Watkins v. Rogers*, 525 F. App'x 756 (10th Cir. 2013); *Peterson v. Lampert*, 499 F. App'x 782 (10th Cir. 2012); *McKinley v. Maddox*, 493 F. App'x 929 (10th Cir. 2012)).

[29] 760 F. App'x 550 (10th Cir. 2019).

[30] *Id.* at 555.

discriminating on behalf of the inmate's religion.[31]   Thus, because the Tenth Circuit has applied the purposeful discrimination standard more frequently and most recently in analyzing First Amendment claims brought under § 1983, the Court will apply this standard to Toney's claim.

Here, the record shows that Toney first complained to Quidichay by filing a Form 9 on June 20, 2015.  Quidichay responded on June 29, stating that "procedure dictates that you receive your meal prior to sunrise or before daylight."  This means that Quidichay was put on notice of a constitutional violation and had approximately two weeks to take corrective measures before Ramadan ended.  At best, this evidence shows that Quidichay was aware that denying Toney's request would interfere with the free exercise of his religion.  But, it is insufficient to raise the inference that Quidichay denied Toney's request because of his religion.  Indeed, there is no evidence in the record that Quidichay acted with a discriminatory purpose.  Therefore, Toney has failed to raise a triable issue of disputed fact over whether Quidichay's conduct rises to the level of a constitutional violation.  Therefore, Toney has not met the first prong of the qualified immunity analysis, and Quidichay is entitled to qualified immunity.[32]

### 2.     *Clearly Established Right*

In the alternative, the Court concludes that Quidichay is entitled to qualified immunity because Toney cannot establish the second prong of the qualified immunity test—that Quidichay's conduct violated a clearly established constitutional right.  Whether a right is clearly established often depends on how broadly or narrowly that right is defined.  The Supreme Court has

---

[31] *Id.*

[32] *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) ("[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.") (citations omitted).

admonished courts "not to define clearly established law at a high level of generality."[33]   Instead, the right's "contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' "[34]   Although there does not have to be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."[35]   In deciding if a right is clearly established, the Court looks to Supreme Court and Tenth Circuit precedent, as well as the "weight of authority from other courts."[36]   "While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability."[37]

The Tenth Circuit recently examined whether the law was clearly established in a case factually similar to the one at issue here—*Ralston v. Cannon* ("*Ralston II*").[38]   Ralston is a Messianic Jew who was arrested and booked into a detention center in January 2014.[39]   He brought a § 1983 claim alleging the violation of his First Amendment rights when the detention center's chaplain denied him a Kosher diet from January 2, 2014, to February 4, 2014.[40]   The district court granted the defendant chaplain qualified immunity on the basis that Ralston failed to raise a triable issue of disputed fact over whether the chaplain's conduct rose to the level of a constitutional

---

[33] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

[34] *District of Columbia v. Wesby*, ---U.S.---, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[35] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citations, alterations, and quotations omitted).

[36] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

[37] *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (internal citation omitted).

[38] --- F. App'x ---, 2021 WL 3478634 (10th Cir. 2021).

[39] *Id*. at *1.

[40] *Id*.

violation.[41]   Relying on the *Iqbal* standard, *i.e.,* purposeful discrimination, the district court concluded that Ralston must prove that the chaplain acted with discriminatory purpose and there was no evidence that the chaplain denied Ralston's diet request because of his religion.[42]

On appeal, the Tenth Circuit did not address whether there was a constitutional violation. Instead, it chose to focus on whether there was a violation of a clearly established constitutional right.[43]   The Tenth Circuit held that during the time period of the alleged violation, *i.e.,* January 2014, "the law was not clearly established that [the chaplain] could be held liable for violating Mr. Ralston's free exercise rights by acting *without* a discriminatory purpose."[44]   The Circuit found that *Ralston I* provided the foundation for this holding.[45]   *Ralston I*, which was decided in 2018, concluded that after *Iqbal*, "it was doubtful in our circuit whether having anything short of a discriminatory purpose would be sufficient to expose a defendant to § 1983 liability for a First Amendment free-exercise violation."[46]   Accordingly, the Circuit found that:

> [I]n 2018, that a reasonable official in the chaplain's position would not have understood that denying a prisoner a kosher diet *without* a discriminatory purpose would subject him to a free-exercise violation.  It follows ineluctably that in 2014— i.e., at the earlier date of the events at issue here—a reasonable official in [the chaplain's] position would not have understood that denying a kosher diet to a prisoner without discriminatory purpose would subject him to liability under § 1983 for a First Amendment free-exercise violation.  Stated otherwise, in 2014, the answer to the "constitutional question" of whether or not a plaintiff must act with

---

[41] *Id*. at *2.

[42] *Id*.

[43] *Id*. at *5.

[44] *Id*.

[45] *Id*. at *6.

[46] *Id*.

purposeful discrimination to be liable for a free-exercise violation would not have been "beyond debate."[47]

Therefore, the Tenth Circuit affirmed the district court's holding that the chaplain was entitled to qualified immunity.[48]

Here, the time period at issue is June 29, 2015, to July 17, 2015—the time from which Quidichay responded to Toney's Form-9 complaint denying his request for a meal before dawn to the end of Ramadan. This time period is after the Supreme Court's 2009 decision in *Iqbal*. Based on the Tenth Circuit's analysis in *Ralston II*, there was a serious question in 2015 as to whether the applicable scienter standard for a First Amendment free exercise claim was intentional or conscious interference as stated by *Gallagher* or purposeful discrimination as stated by *Iqbal*. Thus, the law was not clearly established that Quidichay could be held liable for violating Toney's free exercise rights by acting without a discriminatory purpose. Therefore, Quidichay is entitled to qualified immunity. The Court grants his Motion for Summary Judgment.

**B.      Sullivan's Motion for Summary Judgment**

Sullivan argues that he is entitled to qualified immunity on Toney's Eighth Amendment claim because Toney cannot meet either prong of the qualified immunity analysis. First, Sullivan asserts that Toney cannot establish a constitutional violation because the force used was *de minimus* and there is no evidence that Sullivan acted with a sufficiently culpable state of mind. Second, Sullivan asserts that a reasonable person in his position would not have known that his conduct violates a clearly established constitutional right.

*1.      Constitutional Violation*

---

[47] *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

[48] *Id.*

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishments.  An inmate's Eighth Amendment rights are implicated when a prison official subjects the inmate to excessive force.[49]  To determine if an act of force is excessive under the Eighth Amendment, courts undergo a two-part inquiry.  The first part "asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."[50]  The second part is a subjective question that asks whether the alleged offender "acted with a sufficiently culpable state of mind."[51]  Under the objective prong, an excessive force claim cannot succeed if the use of force is both *de minimis* and "not of a sort repugnant to the conscience of mankind."[52]  The focus is on the "nature of the force" used, not merely the seriousness of the inmate's injury.[53]  Under the subjective prong, "[a]n official has a culpable state of mind if he uses force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline."[54]

Sullivan argues that the discharge of pepper spray is a *de minimus* use of force and thus not a violation of the Eighth Amendment.  In support of his argument, Sullivan relies on a list of cases from the Tenth Circuit and this District in which courts concluded that the defendant's use of force against an inmate was *de minimus*.  Only one of these cases, however, involves the use of pepper

---

[49] *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

[50] *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)).

[51] *Id.*

[52] *Brosh v. Duke*, 616 F. App'x 883, 888 (10th Cir. 2015) (citation omitted).

[53] *Graham v. Sherriff of Logan Cnty.*, 741 F.3d 1118, 1123 (10th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

[54] *Sayed v. Virginia*, 744 F. App'x 542, 549 (10th Cir. 2018) (citation and quotations omitted).

spray by the defendant.  In *Gargan v. Gabriel*,[55] an inmate alleged that prison officials sprayed the inmate with pepper spray during a cell extraction.[56]  The Tenth Circuit affirmed the district court's dismissal of the inmate's Eighth Amendment claim because the inmate's complaint contained no facts discussing the need, or lack thereof, of using pepper spray during the extraction.[57]  Without allegations surrounding the use of force, the Tenth Circuit could not conclude that the use of pepper spray was excessive under the circumstances.[58]  *Gargan's* holding supports the position that utilizing pepper spray may be a valid use of force under certain circumstances.  It is not, however, applicable here because the *Gargan* complaint did not contain, and thus, the district court did not analyze, the facts surrounding the need, or lack thereof, to use pepper spray.

The Tenth Circuit has held that "pepper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force."[59] Furthermore, in *DeSpain v. Uphoff*, the Tenth Circuit held that an inmate could bring his Eighth Amendment claim to a jury when he presented evidence that a prison official discharged pepper spray in the prison as a practical joke.[60]  Whether the use of pepper spray is objectively harmful under the Eighth Amendment "turns in part on how long [the inmate] was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily."[61]

---

[55] 50 F. App'x 920 (10th Cir. 2002).

[56] *Id*. at 922.

[57] *Id*. at 923.

[58] *Id*.

[59] *Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001)).

[60] *DeSpain*, 264 F.3d at 979-80.

[61] *Norton*, 432 F.3d at 1154.

In this case, because the parties have failed to comply with D. Kan. Rule 56.1 in responding to the other party's factual assertions, the facts surrounding Sullivan's use of pepper spray on Toney are contested. Sullivan asserts that he sprayed Toney once, for two seconds, after Toney refused to comply with his orders and after being warned twice that he would be sprayed. Sullivan also asserts that Toney was taken directly to irrigation after being sprayed and then to the medical clinic, where he was found to be uninjured. Toney, on the other hand, asserts that he moved away from his cell door without being told to do so and that Sullivan sprayed him twice with no warning. He also asserts that he was *later* taken to irrigation and then to the medical clinic and that he suffered excruciating pain. Given these disputed factual contentions, the Court concludes that there are genuine issues of material fact regarding Sullivan's use of pepper spray.

The next issue is whether Sullivan possessed the requisite subjective intent when he discharged pepper spray into Toney's cell. The core inquiry here is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[62] The following factors should be considered in deciding if force was applied in good-faith or to cause harm: (1) the extent of the inmate's injury, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the defendant, (5) and any efforts made to temper the severity of a forceful response.[63]

Under the first factor, Toney's affidavit states that he suffered excruciating pain from the discharge of pepper spray. He has not come forward with any evidence discussing how long the pain lasted or if he suffered any other injuries. Based on the limited nature of Toney's injury, the

---

[62] *Hudson*, 503 U.S. at 7.

[63] *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (quoting *Hudson*, 503 U.S. at 7).

Court cannot conclude that Sullivan acted maliciously or sadistically.  Thus, this factor weighs in Sullivan's favor.

The second factor weighs in Toney's favor.  Sullivan argues that he used pepper spray to obtain compliance with his orders and regain control of the food port door.  There is no evidence, however, that Sullivan ordered Toney to keep the food port door closed, and Toney states that he opened the door to free his trapped hand.  Furthermore, although Toney reached out of the food port door in an attempt to grab Sullivan, there is no way Toney could have reached him because the door is very small and Toney was inside the cell while Sullivan was standing outside of it.  Accordingly, Sullivan's assertion that force was necessary in this situation is unfounded.

The third factor requires the Court to consider the relationship between the need to use force and the amount of force used.  Because it is doubtful that this incident required Sullivan to use any amount of force, Sullivan's use of pepper spray exceeded what was necessary under the circumstances.  Thus, this factor weighs in Toney's favor.

The fourth factor likewise favors Toney.  While Sullivan may have perceived Toney's action of grabbing at him through the food port door as a serious threat, Toney was locked in his cell during the entire altercation and could not have reached him.  Thus, it is not reasonable for Sullivan to believe that Toney posed an immediate threat to anyone's safety.

Finally, under the fifth factor, the Court considers any efforts made by Sullivan to temper the severity of a forceful response.  This factor also weighs in Toney's favor.  Sullivan never attempted to diffuse the situation or ensure compliance using tactics other than force.  The altercation was not so serious to warrant an immediate forceful response without first attempting a more peaceful resolution.

Four of the five factors suggest that Sullivan did not act in good faith to maintain or restore discipline.  The Court therefore concludes that there is a genuine issue of material fact regarding whether Sullivan acted with the requisite state of mind on Toney's excessive force claim.  Toney has met his burden under the first prong of the qualified immunity analysis.

   2.    *Clearly Established Law*

Under the second prong of the qualified immunity test, Sullivan is entitled to immunity unless his alleged actions violated a clearly established right.  "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[64]  In determining whether a right is clearly established, the Court looks for a Supreme Court or Tenth Circuit case that is sufficiently on point, or the clearly established weight of authority from other courts.[65]  "Ultimately, existing precedent must have placed the statutory or constitutional question beyond debate."[66]  The facts of the cases compared need not be identical, but they must be "sufficiently analogous to satisfy the particularized context necessary to support liability."[67]

Adhering to his version of the facts, Sullivan argues that a reasonable person in the same situation would not have reason to know that using pepper spray for two seconds in order to restore discipline, obtain compliance with two direct orders, and regain control of the food port door would violate Toney's clearly established rights under the Eighth Amendment.  The Court, however, must

---

[64] *Stevenson v. Cordova*, 733 F. App'x 939, 943–44 (10th Cir. 2018) (citation omitted).

[65] *Id.* at 944 (citation omitted).

[66] *Id.* (citation and quotations omitted).

[67] *Mecham*, 500 F.3d at 1206 (internal quotation omitted).

view the facts in the light most favorable to Toney and thus accepts Toney's factual allegations. These facts reflect that in June 2016, Sullivan and Toney engaged in an altercation regarding his morning breakfast.  At all times, Toney was inside his cell and Sullivan was standing outside of it. After Sullivan slammed the food port door on Toney's hand, Toney lifted the door off his hand and then reached out to grab Sullivan.  Because the port hole door is small, Toney could not have reached him.  Sullivan then moved toward the cell door, and Toney backed away from it.  Sullivan then sprayed Toney with pepper spray without warning.

The right to be free from excessive force involving pepper spray has been clearly established since 2001 when the Tenth Circuit issued its decision in *DeSpain v. Uphoff*.[68]  In *DeSpain*, the plaintiff alleged, among other things, that a prison guard intentionally and indiscriminately discharged pepper spray as a practical joke while walking outside the prison tier that housed the plaintiff.[69]  The Tenth Circuit stated that it would "not require inmates to be subjected to the malicious whims of prison guards" and that the unwarranted use of pepper spray against an inmate is unlawful under the Eighth Amendment.[70]

There are certainly differences between Toney's allegations against Sullivan and the prison guard's conduct in *DeSpain*.  Most notably, the guard in *DeSpain* discharged the pepper spray as a practical joke.  No such evidence exists here.  *DeSpain* is sufficiently analogous, however, that any reasonable prison official would have known that the unwarranted and malicious use of pepper spray against an inmate in a locked cell would violate the Eighth Amendment.  Thus, pursuant to

---

[68] 264 F.3d 965 (10th Cir. 2001).

[69] *Id*. at 977.

[70] *Id.* at 978.

*DeSpain*, and upon accepting the facts alleged by Toney in his affidavit and viewing them in his favor, the Court holds that it was clearly established that Sullivan's conduct during the June 2016 incident represented an excessive use of force that violated the Eighth Amendment. Toney has therefore met his burden as to the second prong of the qualified immunity analysis. Accordingly, the Court denies Sullivan's Motion for Summary Judgment.

### IV.    Conclusion

The Court grants qualified immunity to Defendant Quidichay on the basis that Toney has not established a violation of his First Amendment rights. In the alternative, the Court grants qualified immunity to Defendant Quidichay on the basis that Toney has not established a violation of a clearly established constitutional right. Accordingly, the Court grants Quidichay's Motion for Summary Judgment.

As to Defendant Sullivan, the Court denies qualified immunity. Toney has met his burden to come forward with sufficient evidence to create a genuine issue of material fact that Sullivan violated his Eight Amendment rights by spraying pepper spray at him in his cell. Additionally, the law was clearly established in 2016 that similar conduct represented an excessive use of force in violation of the 8th Amendment. Accordingly, the Court denies Sullivan's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** that Defendant Quidichay's Motion for Summary Judgment (Doc. 198) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Sullivan's Motion for Summary Judgment (Doc. 200) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Toney's Motion for Oral Argument (Doc. 207) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 7th day of September, 2021.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE